UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| BRIAN HEINTZELMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:16 CV 907 DDN |
| | ) | |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This action is before the court for judicial review of the final decision of the Commissioner of Social Security that plaintiff Brian Heintzelman was not disabled, and, thus, not entitled to disability insurance benefits under Title II of the Social Security Act. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born in 1971. (Tr. 170). On October 1, 2012, he filed an application for disability insurance benefits, alleging an onset date of September 14, 2012. (*Id.*). Plaintiff alleged disability due to a neck injury, a back injury, and neck and back surgeries. (Tr. 67, 206). The claim was denied initially in September 2013. (Tr. 112-16). Plaintiff received a hearing before an administrative law judge (ALJ) on April 1,

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Ms. Berryhill is substituted in her official capacity for Carolyn W. Colvin as the defendant in this suit. 42 U.S.C. § 405(g)(last sentence).

2015. (Tr. 29-31, 119). At this hearing, plaintiff and a vocational expert (VE) testified. (Tr. 29-66). On April 8, 2015, the ALJ determined that plaintiff was not disabled.

The Appeals Council of the Social Security Administration denied plaintiff's request for a review of the ALJ's decision. Therefore, the ALJ's decision is the final decision of the Commissioner that is now subject to judicial review.

## **LEGAL PRINCIPLES OF JUDICIAL REVIEW**

In reviewing a final decision denying Social Security disability benefits, the court may not reconsider the administrative record and make its own findings and conclusions on whether or not plaintiff is disabled. *Locher v. Sullivan*, 968 F.2d 725, 727 (8th Cir. 1992). Rather, the court must decide whether the ALJ's decision is based upon substantial evidence on the record as a whole and the ALJ applied the applicable legal standards. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse… merely because substantial evidence would support a contrary outcome." *Id*. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* (citations omitted).

To be entitled to disability benefits under the Act, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A).

By regulations adopted under the Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. § 404.1520. At Step One the Commissioner decides whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), 404.1520(b). If so, the claimant is not disabled. If not, at Step Two the Commissioner decides whether the claimant has a severe impairment or a combination of impairments that qualifies as severe. 20 C.F.R. § 404.1520(a)(4)(ii), 404.1520(c). "Severe impairment" is defined as any impairment or

combination of impairments which significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has a severe impairment that meets the duration requirement, the Commissioner determines at Step Three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulation. 20 C.F.R. § 404.1520(a)(4)(iii), 404.1520(d).

If not so listed, at Step Four the Commissioner decides whether the claimant has the RFC to perform his past relevant work. 20 C.F.R. § 404.1520(f). A claimant's RFC is the most he can still do in a daily work-related environment despite his limitations. 20 C.F.R. § 404.1545(a)(1); *Masterson v. Barnart*, 363 F.3d 731, 737 (8th Cir. 2004.

If the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). If he cannot perform his past relevant work, at Step Five the burden shifts to the Commissioner to demonstrate that the claimant retains the RFC to perform other work that is available in substantial numbers in the national economy and that is consistent with the claimant's vocational factors of age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).

## MEDICAL RECORD

The court accepts and adopts the parties' unopposed statements of relevant facts and descriptions of plaintiff's medical record. The court will discuss specific evidence from the medical record as needed.

## ALJ HEARING

At the hearing before the ALJ, plaintiff testified to the following facts. In 2011, he was working in a dump truck at a road construction site when a tractor trailer hit him. (Tr. 36-38). He worked through 2011, then had a surgical fusion in his lower back and a disk replaced in his neck. (Tr. 38). After these surgeries, his neck "feels great," with "no more shooting pain" down his arm, and his legs no longer have constant pain or fall out from underneath him. (Tr. 39). However, he is still having low back problems when he is on his feet for more than 45 minutes. (Tr. 39-40). He has to alternate between

standing and sitting. (Tr. 40). When sitting "it's not so bad," if he can bend the chair backward a bit, but it depends on the chair. (Tr. 40). He is able to drive and does so, but he prefers not to, because he does not like being on the road with tractor trailers. (Tr. 41). In 2014, plaintiff earned about $7,600 working for Quality Building Products, filling in for a worker who had quit. Plaintiff drove a forklift and loaded trucks. (Tr. 43). The manager of the company is a friend of plaintiff's and accommodated plaintiff's restrictions. (Tr. 42-43). Plaintiff was allowed to sit in the break room or leave at will. (Tr. 43). He would generally work four to seven hours per day. (Tr. 45).

Plaintiff testified that since the accident, he has a shooting or stabbing head pain "constantly . . . it's not every minute of every day, but it's all day long . . . it comes and it goes." (Tr. 47). He has experienced only 23 days in 4 years when he felt no head pain. Severe head pain ranges from five to ten minutes at a time to lasting one to two days. (Tr. 47). He gets severe migraines one to two times a month. During these severe migraines, he is irritable, and he lies down but cannot sleep without medication. (Tr. 48-49).

During a typical day, plaintiff alternates between sitting in a recliner and watching television and going downstairs and walking on a treadmill for up to 20 minutes. Once a week, he does loads of laundry and folds clothes, though he does not carry the laundry baskets up and down the stairs. He helps his children with their homework unless he is having a bad day, and he will prepare microwave meals for them. Plaintiff does no yard work, but continues to occasionally work for his friend at Quality Building Products. (Tr. 50-52).

The VE testified that a person with plaintiff's age, education, and work experience, who can lift and carry up to 20 pounds occasionally; who can push or pull 25-30 pounds occasionally; who occasionally stoop, kneel, crouch, or crawl; who can occasionally work with up to 15 pounds overhead; who must avoid working around hazards like unprotected heights or dangerous machinery; who can perform simple, routine tasks with occasional changes in a routine work setting; and who must alternate between sitting and standing on an hourly basis while remaining at the work station could

- 4 -

not perform plaintiff's past relevant work as a tow-truck driver, dump truck driver, or highway maintenance worker. (Tr. 58-60). However, the VE testified that such an individual could still work as an inspector or as a cashier. (Tr. 60). The VE testified that these jobs exist in significant numbers in the national economy. (Tr. 60-61). Upon questioning by plaintiff's attorney, the VE testified that, if the hypothetical individual needed to regularly take more than two days off of work a month, it would eliminate the jobs of inspector and cashier. (Tr. 62-63).

## **DECISION OF THE ALJ**

In his decision, the ALJ determined the following:

1. Plaintiff met the insured status for a claim under Title II of the Act through December 31, 2015.

2. Plaintiff has not engaged in substantial gainful activity since September 14, 2012, the alleged disability onset date.

3. Plaintiff has the following severe impairments: degenerative disc disease of the cervical and lumbar spine following cervical and lumbar spine surgeries, headaches, and pain induced mood disorder.

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of an impairment on the Commissioner's List of disabling impairments.

5. Plaintiff has the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b),[2] with the following limitations: Plaintiff can lift or carry no more than 20 pounds occasionally; can stand or sit continuously without alternating his position on an hourly basis without leaving the work station; can push or pull no more than 25-30 pounds; can stoop, kneel, crouch, or crawl no more than occasionally; can work overhead with no more than 15 pounds; must avoid working

---

[2] Section 404.1567(b) generally defines "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

around hazards (unprotected heights or dangerous machinery); and could perform no more than simple, routine tasks with no more than occasional changes in the routine work environment.

6. Plaintiff is unable to perform his past relevant work as a tow truck driver, a dump truck driver, or a heavy maintenance worker.

7. Being born on October 11, 1971, plaintiff is considered a younger person under the regulations.

8. Plaintiff has a high school education and is able to communicate in English.

9. Plaintiff Medical-Vocational Rules, plaintiff is not disabled, regardless of whether he has transferable job skills.

10. Considering plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that plaintiff can perform, *i.e.*, cashier and inspector.

11. In consequence, through the date of the ALJ's decision plaintiff was not disabled. (Tr. 3-24).

More specifically, the ALJ determined that plaintiff's part-time work did not rise to the level of substantial gainful activity and that plaintiff had not engaged in substantial activity since the September 14, 2012 alleged onset date. (Tr. 15). With respect to plaintiff's mental impairment, the ALJ found that the "paragraph B" and "paragraph C" criteria of the applicable regulation were not met, because plaintiff did not have at least two "marked" limitations or repeated episodes of decompensation. (Tr. 16).

In determining plaintiff's RFC, the ALJ considered all of plaintiff's symptoms, the extent to which these symptoms were consistent with the objective medical evidence and other evidence, and the opinion evidence. (Tr. 17-22). The ALJ determined that plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible for the several reasons. (Tr. 18-22). First, plaintiff's daily activities were inconsistent with his allegations of totally disabling symptoms. (Tr. 20). The ALJ found that plaintiff "is able to essentially live and function independently, care for his own personal needs and help provide care for his children,

perform light household chores, walk on a treadmill, work part-time, go grocery shopping, and drive an automobile." (Tr. 21, 230-37). Following his neck and back surgeries, plaintiff returned to work with some restrictions. The ALJ also found that plaintiff's part-time work activity as a forklift operator diminished his credibility: "[w]ork performed during any period in which the claimant alleges disability, even when that work activity is not substantial gainful employment, may demonstrate a level of vigor, stamina, and emotional stability inconsistent with the allegation of disability." (Tr. 21).

Second, the ALJ determined that the medical evidence did not support plaintiff's subjective complaints. Most of his impairments were minor or did not result in significant, long-term functional limitations. He never needed psychiatric intervention at a hospital nor did he seek any formal mental health treatment. (Tr. 21). Diagnostic findings in February 2013 revealed a healed fusion in his back. (Tr. 21, 572). Plaintiff can walk independently and there is no evidence of muscle atrophy, spasm, or chronic weakness. (Tr. 21, Ex. 15F). The ALJ determined there was no evidence of record that plaintiff's medication "is not generally effective when taken as prescribed," or that it imposes any significant adverse side effects. (Tr. 21). The ALJ determined that plaintiff's headaches were not of a frequency or severity to prevent plaintiff from working full-time. (Tr. 21).

The ALJ gave great weight to the opinion of plaintiff's treating orthopedic surgeon, Thomas K. Lee, M.D. (Tr. 21-22, 599). Dr. Lee opined that plaintiff was limited to light exertional activity with a sit/stand option and postural, manipulative, and environmental limitations. (Tr. 599). The ALJ found his opinion to be supported by the clinical signs, symptoms and findings, as well as corroborated by Gary W. Rucker, D.O., an examining physician. (Tr. 21-22, 589-95). 20 C.F.R. § 404.1527(d)(2); SSR 96-2p.

The ALJ gave little weight to the opinion of Raymond F. Cohen, D.O., who opined that plaintiff's headaches were debilitating, because it was a "blanket statement of disability," and "[c]onclusory statements that a claimant is disabled are not medical opinions." (Tr. 22, 600-11) He found Dr. Cohen's opinion to be inconsistent with

plaintiff's minimal treatment for headache complaints; inconsistent with the other objective medical evidence of record; inconsistent with the opinion of David M. Peebles, M.D., who opined that plaintiff's headaches imposed no significant limits (345-54); and unsupported by the evidence as a whole. (Tr. 22).

The ALJ also discounted the opinion of J. Stephen Dolan, a certified rehabilitation counselor, who opined that plaintiff experienced debilitating headaches, "which cause profound inability to participate in daily activities," and that plaintiff "is unable to tolerate a work schedule because of back and headache pain." (Tr. 619-20). The ALJ determined that Mr. Dolan's opinions were not supported by the objective medical evidence. (Tr. 22).

The ALJ gave significant weight to the opinion of plaintiff's examining neuropsychologist, Michael V. Oliveri, Ph.D., who indicated that plaintiff's pain-induced depressive disorder imposed no more than mild mental limitations. (Tr. 22, 622-26). The ALJ stated the record did not support any more severe limitation than that plaintiff was restricted to simple work, "based on the paucity of mental health treatment and the evidence as a whole, including the claimant's daily activities and part-time work activity." (Tr. 22).

Finally, the ALJ determined that, although plaintiff is unable to perform his PRW, considering his age, education, work experience, and RFC, and relying on VE testimony, there are inspector and cashier jobs that exist in significant numbers in the national economy that plaintiff can perform. (Tr. 23).

Accordingly, the ALJ determined that plaintiff is not disabled. (Tr. 24).

## PLAINTIFF'S ARGUMENTS

Plaintiff argues the ALJ's decision should be reversed, because it is not supported by substantial evidence. More specifically he argues (1) the ALJ's decision arbitrarily, without explanation, adopted only a portion of the opinion of Thomas K. Lee, M.D., plaintiff's treating surgeon; and (2) the ALJ failed to discuss or state the weight given to

the opinions of Leonard Simpson, M.D., the non-treating, non-examining physician who reviewed plaintiff's claim file for the state agency. (Tr. 86).

## **DISCUSSION**

### A.     The Opinion of Dr. Lee

Plaintiff first argues that, although the ALJ gave Dr. Lee's opinion "great weight," he erred by arbitrarily adopting only a portion of that opinion, without explanation. Dr. Lee opined that plaintiff was limited to pushing or pulling 25-30 lbs.; plaintiff was restricted in his bending; he should avoid repetitive stooping; he could occasionally work overhead with 10-15 lbs.; he should lift no more than 15-20 lbs.; plaintiff needed to change positions from sitting to standing every 45-60 minutes. (Tr. 599). The ALJ determined plaintiff's RFC was mostly at the upper limits of these ranges: "lifting or carrying no more than 20 pounds occasionally; standing or sitting continuously without alternating position on an hourly basis without leaving the work station; pushing or pulling no more than 25-30 pounds; stooping, kneeling, crouching, or crawling no more than occasionally; working overhead with no more than 15 pounds." (Tr. 17).

If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," the opinion will be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). If the treating source is not given controlling weight, the ALJ must give "good reasons" for discrediting the opinions. *Id.* The ALJ's primary duty is to "resolve conflicts in the evidence" and determine the weight to give each medical opinion. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006).

As Dr. Lee was plaintiff's treating orthopedic surgeon, the ALJ lawfully gave his opinion great weight, if not controlling weight. The ALJ gave "good reasons" for this assessment. He stated that Dr. Lee "indicated in substance that the claimant was essentially limited to light exertional level work activity with a sit/stand option and non-exertional postural, manipulative, and environmental limitations." (Tr. 21-22, 599). The ALJ considered Dr. Lee to be a treating specialist, and found his opinion to be "supported

by the clinical signs, symptoms, and findings contained in the record and corroborated by Dr. Rucker, an examining physician." (Tr. 22, 513-41, 589-95).

The ALJ's RFC limitations are an adaption of Dr. Lee's limitations; the two are not in conflict. The RFC limitations are within the range of weight and functional limitations set forth by Dr. Lee. (Tr. 17, 599). A plaintiff's RFC is "the most [he] can still do despite [his] limitations," 20 C.F.R. § 404.1545, and it was not improper for the ALJ to limit plaintiff to "no more than" the upper limits of Dr. Lee's ranges in describing the most he could still do.

### B.     The Opinion of Dr. Simpson

Plaintiff argues the ALJ erred by not acknowledging or addressing the opinion of the non-examining state agency medical consultant, Dr. Leonard Simpson. (Tr. 85-86, 92-93). Plaintiff argues that unless the ALJ gives controlling weight to the opinion of a plaintiff's treating physician, the governing rules require the ALJ to "explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." (Doc. 9) (quoting 20 C.F.R. § 404.1527(e)(2)(ii)(2017)). Relatedly, § 404.1513a (2017) provides:

> (b) Administrative law judges . . . will consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants as follows:
>
> > (1) Administrative law judges are not required to adopt any prior administrative medical findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation.

20 C.F.R. § 404.1513a(b)(1). Section 404.1520b requires the consideration of evidence by its completeness and consistency, stating that the Commissioner may seek additional evidence in a variety of forms and need not discuss conclusory statements made by others about the legal status of a claimant's limitations (e.g., a statement that a claimant is

disabled).  20 C.F.R. § 404.1520b, esp. § 404.1520b(c)(2).  Section 404.1520c only applies to claims filed after March 27, 2017.  Accordingly, it appears that the controlling standard for review of the ALJ's decision as to a state agency disability examiner is that he must properly consider this evidence, but is not required to adopt its legal conclusion of disabled or not disabled.

Dr. Simpson opined on March 27, 2013, that plaintiff was "limited to significantly less than a full range of sedentary work" and, "[b]ased on the documented findings," he stated his determination of plaintiff as "Disabled."  (Tr. 92).  He opined that improvement could be expected by February 1, 2014.  (Tr. 93).  The Social Security Office of Quality Performance reviewed Dr. Simpson's opinion and stated there was insufficient medical evidence to fully evaluate plaintiff's claim, and more evidence was needed to clarify the duration of his impairments.  (Tr. 93, 95).  By September 19, 2013, the state agency changed its ultimate decision to "Not Disabled."  (Tr. 109).

Failing to cite Dr. Simpson's medical opinion does not, by itself, indicate it was not considered by the ALJ.  *Hensley v. Colvin,* 829 F.3d 926, 932 (8th 2016) ("[A]n ALJ is not required to discuss every piece of evidence submitted.") (citation omitted).  An "ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001).  Furthermore, the opinion of a non-examining, non-treating physician, like Dr. Simpson, does not generally constitute substantial evidence.  *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010).

Dr. Simpson did not examine plaintiff, and the record contains a significant amount of examination reports and surgical records, as well as the opinions of examining and treating physicians, including plaintiff's treating surgeon, Dr. Lee, to whom the ALJ gave great weight.  (Tr. 19-22, 509-611, 622-26).  The ALJ in this case stated that he considered "all the evidence," and then thoroughly discussed and evaluated relevant evidence throughout his decision.  (Tr. 13, 15-23).  Although the ALJ did not specifically mention Dr. Simpson's state agency report, the ALJ considered and addressed the issues

discussed by Dr. Simpson without specifically mentioning him.  The ALJ sufficiently considered and evaluated the record evidence.

## CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed.  An appropriate Judgment Order is issued herewith.

                               **S/   David D. Noce**
                             **UNITED STATES MAGISTRATE JUDGE**

**Signed on September 18, 2017.**